UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JASON BRENT,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC.; NIKE RETAIL SERVICES, INC.; RODGER USHIO; and R.J. HILL,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:19-cv-00749-RJS-JCB<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court is Defendants Nike, Inc.; Nike Retail Services, Inc.; Rodger Ushio ("Mr. Ushio"); and R.J. Hill's ("Mr. Hill") (collectively, "Nike") Motion to Dismiss.[1] At the outset, the court recognizes that Plaintiff Jason Brent ("Mr. Brent") is proceeding pro se in this case. Consequently, the court will construe his pleadings liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

Mr. Brent brought this action against his employer and managers based on the conditions of his employment and circumstances surrounding his resignation. Mr. Brent asserts age discrimination claims, Title VII claims, and unspecified state-law claims. The claims are asserted against Nike as his employer and against Mr. Ushio and Mr. Hill as his managers (collectively, "Individual Defendants") in their official and personal capacities. Nike has moved to dismiss the claims in their entirety under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the court recommends granting the motion to dismiss.

## BACKGROUND

Mr. Brent is 46 years old and was employed by Nike at the Nike Factory Store in West Jordan, Utah from November 25, 2012, to December 14, 2017.[2] Mr. Brent held various management positions

---

[1] ECF No. 15.
[2] ECF No. 14 at 8.

and roles at the Nike Factory Store throughout his tenure with Nike and received positive Coaching for Excellence ("CFE") performance evaluations from 2012 through mid-2017.[3] Around May 2017, in a departure from his prior positive reviews, the store manager, Mr. Ushio, required Mr. Brent to conform to a Performance Improvement Plan ("PIP").[4] Mr. Brent alleges that Mr. Ushio made it unnecessarily difficult to meet his PIP goals and that the PIP was implemented as pretext to terminate his employment.[5] Mr. Brent received a disciplinary action in September and written warnings followed until the end of the year.[6] Between May and December, Mr. Brent alleges Mr. Ushio "made the working environment more intolerable by his actions"[7] which culminated in his forced resignation in December.[8] Specifically, Mr. Brent alleges his employment was terminated through constructive discharge on December 14, 2017.[9]

Mr. Brent filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 13, 2018,[10] and the EEOC issued a notice of right to sue letter on February 27, 2019.[11] On May 24, 2019, Mr. Brent filed suit against Nike.[12] Mr. Brent asserts the following causes of action in the amended complaint: (1) age discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"), (2) hostile work environment in violation of the ADEA, (3) retaliation in violation of Title VII and the ADEA, and (4) unspecified state-law claims. Nike moved to dismiss.

---

[3] *Id*. at 8, 12.
[4] *Id*. at 9.
[5] *Id*. at 10.
[6] *Id*. at 12.
[7] *Id*. at 11.
[8] *Id*. at 14.
[9] *Id*. at 8.
[10] ECF No. 27 at 2.
[11] ECF No. 14 at 22.
[12] The lawsuit was initiated in state court and was subsequently removed to federal court.

## PROCEDURAL HISTORY

On September 1, 2020, the undersigned issued a Report and Recommendation, recommending Nike's motion to dismiss be granted.[13] Specifically, the undersigned concluded that the Title VII claims were not cognizable as age is not a protected class under Title VII and that the Individual Defendants should be dismissed because supervisors may not be held personally liable under Title VII or the ADEA. The court also recommended Mr. Brent's ADEA claims be dismissed as time-barred. Specifically, the court found that Mr. Brent's EEOC discrimination charge was filed on December 13, 2018, and that the latest act of discrimination (constructive discharge) took place on December 14, 2017. By the court's calculation, Mr. Brent filed his charge 364 days after the last alleged unlawful employment practice and, therefore, the court concluded his ADEA claims were barred as untimely for failure to file a discrimination charge within the 300-day limitations period. The court then recommended declining to exercise supplemental jurisdiction over Mr. Brent's state law claims on the basis that no federal claims remained.

On September 18, 2020, Mr. Brent timely filed an Objection to the Report and Recommendation.[14] In his Objection, Mr. Brent agrees with all the undersigned's recommendations except for dismissal of the ADEA claims and submits new evidence suggesting his ADEA claims are not time-barred: an email exchange indicating he filed his charge of discrimination with the EEOC on September 13, 2018, not December 13, 2018.[15] Because of this new evidence, Chief Judge Shelby returned the Report and Recommendation to the undersigned with instructions to consider if Mr. Brent's ADEA claims were still valid and whether any additional actions should be taken in light of Mr. Brent's

---

[13] ECF No. 26.
[14] ECF No. 27.
[15] ECF No. 27 at 4-7.

Objection and the new evidence contained therein.[16] Accordingly, under Chief Judge Shelby's Order, the undersigned has considered the new evidence and issues the following Report and Recommendation.

## LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). Thus, "the complaint must give the court reason to believe that this plaintiff has reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also documents attached thereto, and any external documents that are referenced in the amended complaint whose authenticity is not in dispute. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis. *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557)

---

[16] ECF No. 28.

(citations omitted) (alteration in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rule 8 requires, at least, that the allegations of a complaint put the Nike fairly on notice of the claims against him. *Twombly*, 550 U.S. at 555. The twin purposes of a complaint are to give the opposing party fair notice of the basis for the claims against him so that he may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.* 891 F.2d 1473, 1480 (10th Cir. 1989).

As mentioned above, the court recognizes that Mr. Brent is proceeding pro se. Therefore, the court will "construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). That said, Mr. Brent's pro se status does not discharge him from complying with the court's rules and procedures, and the court will not assume an advocacy role on Mr. Brent's behalf. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

## ANALYSIS

For purposes of this Report and Recommendation, the court assumes that the new evidence that Mr. Brent presented to Chief Judge Shelby is sufficient to render timely any claims that may have arisen between November 17, 2017 and December 14, 2017.[17] Given this assumption, the court finds that Mr. Brent's ADEA claims of discrimination (based on constructive discharge) and hostile work environment

---

[17] While the harassment and mistreatment he allegedly endured during employment may constitute one single unlawful employment practice for timeliness purposes, Mr. Brent's involuntary resignation ended the alleged harassment. As soon as he resigned, Mr. Brent and Nike severed their relationship. His resignation—like a termination, failure to promote, or refusal to hire—constitutes a "discrete act" as explained in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). Therefore, the 300-day clock began to run on his claims for constructive discharge, hostile work environment, and retaliation on December 14, 2017. As noted above, the new evidence indicates Mr. Brent filed his discrimination charge with the EEOC on September 13, 2018. Because November 17, 2017, is 300 days prior to the September 13, 2018 EEOC filing, any act prior to that date is time-barred and any acts after that date are timely and may be considered.

5

are timely, but the retaliation claim is not. Because Mr. Brent's constructive discharge allegedly occurred on December 14, 2017, it serves as an actionable event for his discrimination claim, which occurred within the 300-day limitations period.[18] The hostile work environment claim is likewise timely because at least one act contributing to the hostile work environment claim occurred after November 17, 2017, and as such, "the entire period of the hostile environment may be considered by a court for purposes of determining liability."[19] Morgan, 536 U.S. at 117. The retaliation claim fails because Mr. Brent did not exhaust his administrative remedies. Therefore, the court again recommends dismissal of Mr. Brent's ADEA claims under Fed. R. Civ. P. 12(b)(6).[20] The court addresses each ADEA claim in turn below. Because Mr. Brent concedes that the undersigned's analysis of the Title VII claims and the claims against the Individual Defendants is correct,[21] the undersigned recommends dismissing these claims for the reasons previously set forth in the September 1, 2020 Report and Recommendation incorporated herein by reference[22] and will not re-address them in this Report and Recommendation.

---

[18] Discrete acts of discrimination or retaliation occur on the day the conduct happens. Morgan, 536 U.S. at 110. The Supreme Court emphasizes that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. at 113. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. As such, the only discrete act alleged within the limitations period is constructive discharge. However, the court may consider untimely allegations as background or contextual evidence in evaluating his constructive discharge claim.

[19] Because hostile work environment claims, by their very nature, involve repeated conduct over a long period of time, the Supreme Court explained that, as long as any act contributing to the hostile work environment claim falls within the 300-day period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117.

[20] In examining the timeliness of events in which to consider, the court notes that a small period exists during which Mr. Brent's general reference to 2017 alleges discriminatory acts that may be timely to the extent they took place between November 17 and December 14, 2017. These potentially timely acts include: exclusion from NSDD trainings events and leadership opportunities in 2017, unfavorable/false PAR evaluations in 2017, written warnings and disciplinary actions issued between November 2017 and December 2017, and poor CFE review and/or omission in November 2017. For purposes of this motion only, the court assumes these acts are timely and considers them in the court's analysis of whether Mr. Brent has sufficiently stated claims under Fed. R. Civ. P. 12(b)(6) which, as shown below, the undersigned concludes Mr. Brent has not done. However, in the event the court disagrees with the undersigned's conclusion and determines Mr. Brent's claims survive, in light of Mr. Brent's pro se status, the court recommends granting Mr. Brent an opportunity to amend the complaint to re-allege the above discriminatory acts that occurred on or after November 17, 2017, within 30 days of the court's order.

[21] ECF No. 27 at 3.

[22] ECF No. 26.

### I. MR. BRENT FAILS TO STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT

To state a claim for hostile work environment under the ADEA, Mr. Brent's complaint must allege facts plausibly showing that he was subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). To determine whether conduct is severe or pervasive, the court considers the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating; and whether it unreasonably interferes with an employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). The United States Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment." *Id*. at 788 (stating the standard "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace").[23] The factual allegations must be sufficient to show that the plaintiff was subjected to a work environment that was both subjectively and objectively hostile and must support a contention that the harassment stemmed from *age-related animus* as opposed to some other motivation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

Mr. Brent's hostile work environment claim rests on the following allegations: he was excluded from NSDD training and leadership opportunities between 2015 and 2017;[24] he was denied scheduling requests to attend continuing education classes in 2013 and 2016;[25] he received unfavorable Performance Achievement Record ("PAR") evaluations and poor CFE reviews in 2017;[26] he was placed on a PIP action

---

[23] The ADEA applies the same standard as Title VII for hostile work environment claims. *MacKenzie v. City and Cnty. of Denver,* 414 F.3d 1266, 1280 (10th Cir. 2005); *Daviss v. Sch. Dist. No. 1*, No. 14-CV-00795-CMA-KMT, 2015 WL 5315615, at *4 (D. Colo. Aug. 24, 2015).
[24] ECF No. 14 at 8-9,
[25] *Id*. at 14.
[26] *Id*. at 10-11, 16.

plan in May 2017 and subjected to excessive scrutiny;[27] he would have to sit through his boss's coaching sessions, which he describes as "difficult" because of his boss's "argumentative style, condescending tone of voice, belittling comments, incorrect facts, wrongfully blaming, [and] personal insults";[28] Mr. Brent's ability to do his job was negatively affected "due to removing staff[,] reassigning staff[,] understaffing, [and] withholding required hours"[29]; and, Mr. Brent was subjected to the following age-based comments in 2016: "Beware of old Jason," "Old grouch and argumentative," "I've been around long enough that I should know better," and "It's a fast pace environment, you sure you can keep up with them."[30]

These incidents, taken as true and evaluated as a whole, may well have been unpleasant, but do not rise to the level of severe or pervasive discrimination to support a hostile work environment claim. Specifically, as discussed in order below, Mr. Brent has not plead a plausible claim of either severe or pervasive hostility.

    A.  <u>The Alleged Hostility Was Not Severe</u>

Mr. Brent's well-pleaded factual allegations do not plausibly establish the requisite severity to plead a hostile work environment claim based on age. Isolated incidents of questionably negative remarks do not establish severity especially where, as here, not every interaction between management and employee deals with pleasant topics. *See, e.g.*, *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) ("A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments."). Here, Mr. Ushio's remarks cited in Mr. Brent's amended complaint appear to be isolated incidents and amount to the type of teasing and offhand comments that are part of the ordinary tribulations of the workplace. *Compare Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.

---

[27] *Id.* at 9.
[28] *Id.* at 13.
[29] *Id.* at 14.
[30] *Id.* at 12.

2005) (holding two racially offensive remarks "fall far short of the 'steady barrage' required for a hostile environment claim"), *and Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (providing that the fact that supervisor made regular references to "old ladies," once did not allow the plaintiff to participate in a training session because it was "too hard to train old ladies," and once commented that she "didn't have the right parts" to fill in shifts were isolated incidents which did not reach an actionable level of harassment), *with Norris v. Acadiana Concern for Aids Relief Educ. & Support*, 421 F. Supp. 3d 399, 409 (W.D. La. 2019) (employee subjected to regular pattern of age-based harassing comments by supervisor including, inquiring about employee's retirement status numerous times, asking employee about her age and about how much longer she planned to work, while younger co-workers did not receive same comments or inquiries into age or retirement plans).

  Even though Mr. Brent alleges the workplace became increasingly intolerable after he received negative marks and was placed on a PIP action plan in May 2017, such allegations do not save his claim because such actions describe ordinary workplace events without objectively establishing the required nexus to Mr. Brent's age. Although criticism as to his performance may have been frustrating and discouraging to hear, Mr. Brent fails to show how enforcement of workplace expectations constitutes harassment. *See, e.g.*, *Givens v. Cingular Wireless,* 396 F.3d 998, 998 (8th Cir. 2005) ("[P]lacing [an employee] on a 'performance improvement plan,' without more, did not constitute an adverse employment action."); *Plautz v. Potter,* 156 Fed. Appx. 812, 819 (6th Cir. 2005) ("[C]onversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress."); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment."); *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("[F]ormal criticism or poor performance evaluations are not necessarily adverse actions and they should not be considered such if they did not affect the employee's grade or salary.").

As to Mr. Brent's grievances regarding Mr. Ushio's coaching sessions, management style, and staffing decisions, the allegations are too vague and conclusory to meaningfully contribute to the claim of hostile work environment based on age. Further, the grievances appear to be commonly shared among the store employees regardless of age, which undermines the claim that Mr. Ushio's actions were directed at Mr. Brent (or others similarly situated) or motivated by age. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 938 (7th Cir. 1996) (providing that "specific allegations of discriminatory or harassing conduct directed at [plaintiff]" are required to show hostile work environment). Accepting Mr. Brent's allegations as true leads to the conclusion that his manager may have undesirable leadership or interpersonal skills, but they do not plausibly show that Mr. Brent was subject to a hostile work environment.

B.  <u>The Alleged Hostility Was Not Pervasive</u>.

The five-year period comprising the allegedly hostile work environment was dotted with loosely related workplace grievances and, therefore, does not reveal a "pervasive" pattern of abuse. Intermittent hostility over a lengthy period of time does not meet the requirements of being "pervasive." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (holding that occurrence of alleged incidents intermittently over a seven-year period suggests the absence of a condition sufficiently "pervasive" to establish liability). Indeed, during the five-year period at issue, Mr. Brent, by his own account, held various management positions, received positive reviews and recognition from members of upper management, and was provided the opportunity to attend the SM meeting in Denver as well as largely manage a store remodel in October 2017[31]—events that substantially undermine his claim of hostile work environment. For these reasons, the court concludes Mr. Brent has failed to state a claim for hostile work environment and recommends granting Nike's motion to dismiss that claim.

---

[31] Albeit not under circumstances that he finds merit based. ECF No. 14 at 9.

## II. MR. BRENT FAILS TO STATE A CLAIM FOR DISCRIMINATION

Mr. Brent's claim for discrimination also fails. To assert discrimination under the ADEA, Mr. Brent must allege that: (1) he is a member of the class protected by the ADEA; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010). Ultimately, to succeed on a claim of age discrimination, a plaintiff must prove that his employer would not have taken the challenged action but for the plaintiff's age. *Id.* at 1277. The court assumes *arguendo* that Mr. Brent can establish elements (1), (3), and (4). The dismissible problem stems from element (2).

Mr. Brent claims that the adverse employment action that he suffered is a constructive discharge. Constructive discharge qualifies as an adverse employment action under the ADEA. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). To state a claim for constructive discharge under the ADEA, Mr. Brent must demonstrate the working conditions were so intolerable that a reasonable person in his position would have been compelled to resign, and that they were intolerable because of impermissible age discrimination. *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270–71 (10th Cir. 2004). In evaluating constructive discharge claims under ADEA, the court does not consider the plaintiff's subjective feelings, but employs an objective standard. *Id*. The standard for proving constructive discharge is higher than the standard for proving a hostile work environment. *Zisumbo v. McCleodUSA Telecom. Servs., Inc.*, 154 F. App'x 715, 729 (10th Cir. 2005) ("Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case, an employee is expected to remain employed while seeking redress."); *see also Landgraf v. USI Film Prod.*, 511 U.S. 244, 248 (1994) (stating that to prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment).

Because Mr. Brent is unable to state a claim for hostile work environment, it follows that he is also unable to state a claim for constructive discharge which requires evidence of even more severe conditions. However, even assuming that his hostile environment claim was cognizable under the ADEA, Mr. Brent's constructive discharge claim still fails because the amended complaint offers no factual allegations that rise to the level that a reasonable person would find intolerable. Mr. Brent's allegations, at most, show that his supervisor had a harsh, confrontational, and perhaps even at times offensive style of management, and had subjected him to pointed criticism. However unpleasant, the allegations do not show that Mr. Ushio's acts were based on age and were so intolerable that a reasonable person in Mr. Brent's position would have been compelled to resign. Indeed, Mr. Brent stayed for several months after the alleged discriminatory confrontations, suggesting that the confrontations were not so intolerable as to leave him with no choice but to resign. Similarly, a threat of termination does constitute a constructive discharge. *Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir. 2000) (providing that verbal threats of termination and criticism do not constitute an adverse employment action); *Hargay v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("[A] threat of termination does not constitute a constructive discharge."); *Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992) (finding no constructive discharge because "plaintiff ha[d] not shown that the choice between resignation or facing termination caused her resignation to be submitted under duress and that she had no real choice"). Moreover, to the extent Mr. Brent alleges he resigned upon discovery that his termination notice was going to be approved by his managers, such allegations subvert Mr. Brent's claim that his resignation was the result of intolerable working conditions or was otherwise involuntary. Therefore, because Mr. Brent cannot establish the only purportedly adverse employment action that is timely under the ADEA's limitations period (i.e., constructive discharge), he has not pleaded a plausible claim of discrimination, which requires dismissal of that claim.

### III.   MR. BRENT FAILS TO STATE A CLAIM FOR RETALIATION

Mr. Brent's retaliation claim fails to state a claim for want of administrative exhaustion. To exhaust administrative remedies under the ADEA, a plaintiff must file a charge with the EEOC, receive a right to sue letter, and file the suit within 90 days of receiving the letter. *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011). Each discrete retaliatory or discriminatory action constitutes its own unlawful employment practice for which administrative remedies must be exhausted. *Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003). Although the court must liberally construe Mr. Brent's allegations in the EEOC Charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).

Nike moves to dismiss Mr. Brent's retaliation claim for failure to exhaust the administrative remedies on the basis that acts of retaliation were not the subject of his EEOC claim. Nike's motion is well taken.[32] No acts of protected activity or references to retaliatory behavior are alleged in the EEOC charge of discrimination, which Mr. Brent does not dispute. Although Mr. Brent checked the retaliation box on his EEOC charge, checking the "retaliation" box does not automatically exhaust administrative remedies for an ADEA retaliation claim when the charge contains no mention of protected action. *Andrews v. GEO Group, Inc.*, 288 Fed. App'x 524, 518 (10th Cir. 2008) (recognizing that pleaded claim must be mentioned or alluded to in the original charge itself to be considered "stated" in the original charge). Because Mr. Brent failed to exhaust the administrative remedies, his retaliation claim should be dismissed for failure to state a claim.[33]

---

[32] Although Nike moves to dismiss Mr. Brent's retaliation claim pursuant to Fed. R. Civ. P. 12(b)(1) for failure to exhaust administrative remedies, the Court of Appeals for the Tenth Circuit previously held that the exhaustion of administrative remedies is no longer a jurisdictional defense under Rule 12(b)(1) and is properly brought as an affirmative defense under Rule 12(b)(6). *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1182–85 (10th Cir. 2018). Accordingly, the court treats Nike's Rule 12(b)(1) arguments as though made under Rule 12(b)(6).

[33] Even if Mr. Brent's retaliation claims had been properly presented in his EEOC charge of discrimination, his claims would still fail because they are conclusory in nature and vaguely pleaded. The amended complaint refers to "retaliation" in name but not in substance because it lacks factual support. Mr. Brent mentions that he complained

13

## IV. DECLINE JURISDICTION OVER STATE LAW CLAIMS

"Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction." *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012). However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations and citations omitted).

Although the nature of the claims is not specifically stated, Mr. Brent marked the "state law" box as a basis for bringing this action in his amended complaint. The court has concluded that all of Mr. Brent's federal claims should be dismissed. Therefore, to the extent Mr. Brent asserts claims based on state law, the court should decline to exercise supplemental jurisdiction over those claims. Accordingly, Mr. Brent's state-law claims should be dismissed without prejudice. *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

## V. FUTILITY OF AMENDMENT

Although the court has concluded that Mr. Brent's amended complaint should be dismissed, the court recognizes that it may dismiss a pro se plaintiff's complaint for failure to state a claim "only where

---

about Mr. Ushio's managerial performance to upper management and that his co-workers called a hotline to complain about Mr. Ushio, but the complaint lacks any allegations that adverse actions were taken against Mr. Brent because of such complaints or that his complaints related to the alleged discriminatory behavior. Instead, Mr. Brent's complaints to management appear to be about Mr. Ushio's management style generally, which is not protected activity. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("To qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA. General complaints about company management and one's own negative performance evaluation will not suffice.").

it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (quotations and citation omitted). Given the foregoing analysis, and the fact that Mr. Brent has already been provided with an opportunity to amend his complaint, the court has determined that Mr. Brent could not provide any additional, plausible allegations that would save any of his claims from dismissal. Accordingly, the court concludes that it would be futile to provide Mr. Brent with an opportunity to amend his complaint.

## RECOMMENDATION

Based on the foregoing analysis, IT IS HEREBY RECOMMENDED that:

1. Nike's Motion to Dismiss[34] be GRANTED.

2. Mr. Brent's federal claims in this action be DISMISSED WITH PREJUDICE.

3. Mr. Brent's state-law claims in this action be DISMISSED WITHOUT PREJUDICE.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 12th day of February 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[34] ECF No. 15.